Case No. 24-8048

IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

MINEONE WYOMING DATA CENTER, LLC, a Delaware limited liability company

*Defendant-Appellant,*

v.

BCB CHEYENNE LLC d/b/a BISON BLOCKCHAIN, a Wyoming limited liability company

*Plaintiff-Appellee.*

---

On Appeal from the United States District Court
for the District of Wyoming
The Honorable Judge Alan B. Johnson
Docket No. 1:23-CV-0079-ABJ

---

### APPELLANT'S RESPONSE TO ORDER

---

Sean Larson, Wyoming State Bar #7-5112
HATHAWAY & KUNZ, LLP
2515 Warren Avenue, Suite 500
P.O. Box 1208
Cheyenne, Wyoming 82003-1208
Phone: (307) 635-7723
Fax: (307) 634-0985

ATTORNEY FOR DEFENDANT-APPELLANT

1

I.   Introduction

On August 13, 2024, this Court issued its *Order* concerning a potential jurisdictional defect and whether it should summarily dismiss the appeal. Case No. 24-8048, Doc. No. 010111093932. The Court raised concerns regarding whether the order that is the subject of the appeal is an appealable order because there is no final judgment, and a writ of attachment is not appealable. *Id.* In its *Order*, the Court directed Appellant to either file a written response to the *Order* addressing any basis in law for the Court to exercise jurisdiction over the appeal, voluntarily dismiss the appeal, or elect not to file a response and allow the Court to dismiss the appeal. *Id.* Appellant respectfully submits this response which addresses the basis for this Court to exercise jurisdiction over the appeal.

II.  Analysis

*A. Factual Background*

MineOne Wyoming Data Center, LLC ("MineOne") owns real property located at 635 Logistics Drive in Cheyenne, Wyoming (the "North Range Site") and located at Lot 1 Block 4 Venture Dr. in Cheyenne, Wyoming (the "Campstool Site"). *Purchase and Sale Agreement,* Case No. 23-CV-79-ABJ, Doc. No. 195-4. The North Range Site and the Campstool Site were intended to be used for bitcoin mining operations. *Id.* MineOne entered into an agreement with BCB Cheyenne LLC ("BCB") to provide project management and operation and maintenance services at

these sites. *Development, Hosting & Services Agreement*, Case No. 23-CV-79-ABJ, Doc. No. 195-2. However, BCB was unable to deliver on its promises and instead, filed a lawsuit in the U.S. District for the District of Wyoming on May 3, 2023 (after filing in Wyoming Chancery Court and that action being dismissed). *See Complaint for Breach of Contract, Anticipatory Repudiation of Contract, Intentional Interference with Contractual Relations, Alter Ego Liability, Enterprise Liability, and Lost Profits and Money Damages* and *Exhibit A*, Case No. 23-CV-79-ABJ, Doc. No. 1, 1-1.

As the case was being litigated, the President of the United States issued an *Order Regarding the Acquisition of Certain Real Property of Cheyenne Leads by MineOne Cloud Computing Investment I L.P.* (the "Presidential Order") on May 13, 2024 which required MineOne to divest itself of its ownership interests in the North Range Site within 120 days and to remove all equipment and improvements from the site within 90 calendar days unless extended. Case No. 23-CV-79-ABJ, Doc. No. 195-3. In light of the *Presidential Order*, MineOne began engaging in negotiations with CleanSpark, Inc. ("CleanSpark"). MineOne and CleanSpark entered into a *Purchase and Sale Agreement* with payment to be conducted through an escrow agent at closing. Case No. 23-CV-79-ABJ, Doc. No. 195-4.

Following issuance of the *Presidential Order*, BCB prematurely filed its *Emergency Motion for a Protective Order with Prejudgment Writs of Attachment*

3

and Garnishment. Case No. 23-CV-ABJ, Doc. No. 182. Indeed, the Motion was so premature that BCB had to file a *Supplement to its Emergency Motion to Enter an Immediate Protective Order/Stay Order for all the Purchase Monies to be Immediately Placed into the Registry of the Court* a short six days later. Case No. 23-CV-ABJ, Doc. No. 192. The district court entered an order regarding the initial filings and reserved a decision pending full briefing and hearing but importantly noted that "it does not clearly appear from specific facts shown by affidavit that immediate and irreparable injury will result before a hearing can be had" and Plaintiff "seems to desire a stay or injunction but fails to articulate the basis for either alluded relief." *Order on Plaintiff's Emergency Motion for a Protective Order with Prejudgment Writs of Attachment and Garnishment*, Case No. 23-CV-ABJ, Doc. No. 194 at 4-5.

Continuing its moving target approach, BCB then filed its *Amended Emergency Motion for Prejudgment Writs of Attachment and Garnishment*. Case No. 23-CV-ABJ, Doc. No. 204. BCB requested the district court take possession of the proceeds of the CleanSpark sale, while acknowledging that the sales had not yet closed on either the North Range or Campstool sites in order "to preserve the status quo." *See id.*

Of particular relevance here, in its opposition papers, MineOne specifically raised the issue regarding the legal fees it needs in having to defend itself in the

lawsuit. *Declaration of Erick Rengifo in Opposition to Plaintiff's Emergency Motion for a Protective Order with Prejudgment Writs of Attachment and Garnishment*, Case No. 23-CV-79-ABJ, Doc. No. 195-1 at 23.

Following the hearing, the district court entered its *Order Granting Request for Issuance of Prejudgment Writs of Attachment and Garnishment* on June 28, 2024 noting that "Plaintiff has a right to attach property of [] MineOne in the amount of $15,529,165.00, as purchase monies exchanged between CleanSpark [] and [] MineOne for the sale of properties in Laramie County, Wyoming" and providing for a $100,000 surety bond. Case No. 23-CV-ABJ, Doc. No. 254. At the time the district court entered its *Order*, the two sites had not yet closed and no money had been paid to the escrow agent. *See Answer to Writ of Garnishment*, Case No. 23-CV-79-ABJ, Doc. No. 280. The North Range Site still has yet to close and is subject to approval by CFIUS. Case No. 23-CV-79-ABJ, Doc. No. 195-3.

Importantly, at the time the district court entered the *Order*, there were two motions to dismiss pending regarding a lack of subject matter jurisdiction due to a lack of diversity of citizenship between BCB and one of the defendants. *Motion to Dismiss*, Case No. 23-CV-79-ABJ, Doc. Nos. 175-176, *Defendants MineOne Wyoming Data Center LLC, MineOne Partners LLC, and Terra Crypto Inc.'s Motion to Dismiss*, Doc. Nos. 178-179. The district court only recently ruled on these Motions, but jurisdiction is still potentially at issue, as this *Order* can still be

appealed, and the district court left the door open to reconsider the issue should supplemental evidence come to light. *Order Denying Defendants' Motions to Dismiss for Lack of Subject Matter Jurisdiction*, Case No. 23-CV-79-ABJ, Doc. No. 324 at 19.

> *B. The Orders and associated documents do not meet the requirements of a prejudgment writ and therefore, cannot be considered one.*

The district court's *Order* was issued pursuant to Federal Rule of Civil Procedure 64, which states that "every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment" and includes attachment, garnishment, and other corresponding or equivalent remedies. The associated *Prejudgment Writ of Attachment* was issued by the district court and directed to the Republic Title of Texas, Inc. Case No. 23-CV-79-ABJ, Doc. No. 260. The *Prejudgment Writ of Garnishment* was issued by the clerk of court and also directed to the Republic Title of Texas, Inc. Case No. 23-CV-79-ABJ, Doc. No. 261.

However, the *Order* and associated documents do not constitute a prejudgment writ of attachment under state law because some features of the writ are contrary to the requirements of Wyoming law. *See Ditucci v. Bowser*, 985 F.3d 804, 810 (10th Cir. 2021) (noting the order might not have constituted a writ under state law because some of the features were contrary to the state law including its

issuance by the district court instead of the clerk of court and its direction to the specific individual instead of the sheriff). As this Court noted in *Ditucci*, it "may look beyond the label assigned by the trial court and 'consider the substance rather than the form of the motion and order.'" *Id.* at 808 (quoting *New Mexico v. Trujillo*, 813 F.3d 1308, 1319 (10th Cir. 2016)). Wyoming Statute § 1-15-202(a) provides that if authorized by a court order, the clerk shall issue the writ of attachment upon the bond filing. It shall be issued in the name of the state of Wyoming and shall be directed to the sheriff of any county in which property of the defendant is located and shall require him to attach and safely keep the property within his jurisdiction. *Id.* at § (d). Here, however, the *Writ* was issued by the district court rather than the clerk of the court and it was directed to the Republic Title of Texas, Inc., not the sheriff. Case No. 23-CV-79-ABJ, Doc. No. 260.

Further, Wyoming Statute § 1-15-201(a), the statute for prejudgment writs of attachment, states that the plaintiff may have the property of the defendant attached as security for satisfaction of any judgment that may be recovered. Here, the district court's purported prejudgment writ of attachment did not actually attach any of MineOne's property on the date it was entered. On the date of the issuance of the purported prejudgment writ of attachment and garnishment, MineOne did not have any interest in the proceeds of the sale of the Sites because neither of the Sites had closed (and still has yet to close with respect to the North Range Site). In fact, at that

time, there was no money to attach or garnish as evidenced by the later filed *Answer to Writ of Garnishment* whereby the Republic Title of Texas, Inc. identified no escrow account subject to the district court's *Order*. Case No. 23-CV-79-ABJ, Doc. No. 280. Thus, the district court's *Order* cannot be considered a prejudgment writ of attachment under the statute because it did not actually attach any property of the defendant at the time it was entered.

### C. The Order and associated documents constitute an injunction that is appealable under 28 U.S.C. § 1292(a)(1).

The *Order* and corresponding writs are more akin to an injunction. *See Ditucci*, 985 F.3d at 809 ("Most court orders are injunctions at some level of generality…"). An injunction is "an equitable decree compelling obedience under the threat of contempt." *New Mexico v. Trujillo*, 813 F.3d 1308, 1318 (10th Cir. 2016) (quoting *Int'l Longshoremen's Ass'n, Local 1291 v. Phila. Marine Trade Ass'n*, 389 U.S. 64, 75 (1967)). Under Section 1292(a)(1) an injunction embraces "orders that are directed to a party, enforceable by contempt, and designed to accord or protect 'some or all of the substantive relief sought by a complaint' in more than temporary fashion." 16 Fed. Prac. & Proc. Juris. § 3922 (3d ed.).

Orders requiring personal action directing the defendant to bring property together for security purposes have been held appealable. 16 Fed. Prac. & Proc. Juris. § 3922.3 (3d ed.) (citing *In re Feit & Drexler, Inc.*, 760 F.2d 406, 411–412 (2d Cir.

1985) (finding an order directing the defendant to gather her property and deliver it to an escrow agent was more than an attachment; it was an injunction, and appealable); *Inter-Regional Financial Group, Inc. v. Hashemi*, 562 F.2d 152, 154 (2d Cir. 1977) (finding the defendant was able to appeal from a prejudgment attachment order to deliver $312,500 worth of securities to the clerk of the court since he was first required to transport the certificates into the State of Connecticut from other states and countries which converted the attachment order into an injunction)). A restraint on use of assets may be a form of injunctive relief for purposes of Section 1292(a)(1) also. *See Klipsch Group, Inc. v. ePRO E-Commerce Limited*, 880 F.3d 620, 626-627 (2d Cir. 2018) (finding appealable a district court order providing for a $2.3 million restraint on assets to secure a possible judgment).

Because the closings had not yet occurred at the time the district court entered its *Order*, the *Order* and associated documents constitute an injunction requiring personal action by MineOne to close its transaction with CleanSpark in order to comply with the Court's *Order* to place the proceeds from the CleanSpark sale in the Court's registry. If the CleanSpark transactions did not close, MineOne would not be able to comply with the district court's *Order* requiring the proceeds of the CleanSpark transaction to be placed in the court registry. It is also a restraint on the use of assets in that MineOne is forced to close on the transaction and then any

resulting proceeds are held in the court registry. Thus, the *Order* is effectively an injunction and is immediately appealable.

Indeed, Plaintiff itself requested an injunction. Case No. 23-CV-79-ABJ, Doc. No. 182 at 10-11 ("This Court also has authority under Wyoming law to issue an injunction to ensure that the Court can make a meaningful decision on the merits."), 9 (citing a case regarding an injunction). The district court recognized this and stated that Plaintiff "seems to desire a stay or injunction but fails to articulate the basis for either alluded relief." Case No. 23-CV-79-ABJ, Doc. No. 194 at 4-5. Plaintiff even conducted an analysis regarding the likelihood of success on the merits, argued that a court order would "preserve the status quo," and made statements regarding the potential consequences and harm it would suffer absent a court order which are key considerations for a preliminary injunction. Case No. 23-CV-79-ABJ, Doc. No. 242 at 5-6; *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 975-76 (10th Cir. 2004) (noting the factors for a preliminary injunction including likelihood of success on the merits and that injunctions which alter the status quo are disfavored and require a heightened burden); *Schwab v. Kansas*, 691 F. App'x 511, 514 (10th Cir. 2017) (noting irreparable harm as a factor for a preliminary injunction).

Ultimately, however, this Court can reserve for another day whether a writ like this constitutes a prejudgment writ of attachment under Wyoming law for

purposes of Federal Rule of Civil Procedure 64 like it did in *Ditucci*. 985 F.3d at 810. Instead, it can proceed to consider the *Carson* factors in determining whether jurisdiction lies over the interlocutory appeal under Section 1292(a)(1). *See id.*

*D. The Carson factors support a finding of jurisdiction over the appeal.*

An interlocutory appeal under Section 1292(a)(1) is proper where it will further the statutory purpose to challenge orders of "serious, perhaps irreparable, consequence" which can effectually only be challenged by immediate appeal. *Id.* at 809 (citing *Carson v. American Brands, Inc.*, 450 U.S. 79, 84 (1981)). While a temporary restraint on the use of passive assets does not generally constitute irreparable injury, these circumstances are different. *See id.* at 811.

*Ditucci* recognized a potential irreparable injury in that the court order would preclude the individual from obtaining legal representation in the dispute. *Id.* at 812 (citing *Westar Energy, Inc. v. Lake*, 552 F.3d 1215, 1225 (10th Cir. 2009)). That issue was not decided in *Ditucci* because this Court found that financing the litigation in that case was not problematic when the district court issued the order, as the individuals continued to draw annual salaries of approximately $259,000 from the Chapter 11 restructuring plan and it was only after the appeal that the proceedings were converted to Chapter 7 and cut off the source of income. *Id.* Thus, the district court in *Ditucci* did not have the chance to consider the impact, and this Court held that the district court should address the matter. *Id.* In *United States ex rel. Lutz v.*

*United States*, 853 F.3d 131, 139 n.10 (4th Cir. 2017), which was cited by this Court in *Ditucci*, the Fourth Circuit specifically noted that the parties could seek relief from the court upon a showing that the writs hindered their ability to pay legal fees. *Ditucci*, 985 F.3d at 812-813.

Here, the payment of the legal fees has always been at issue and before the district court during the relevant proceedings unlike in *Ditucci*. Indeed, MineOne's representative specifically pointed out the issue of unpaid legal fees in having to defend itself in the lawsuit. Case No. 23-CV-79-ABJ, Doc. No. 195-1 at 23.[1] If the proceeds from the CleanSpark sale are held up in the court's registry, MineOne may be unable to pay its legal fees in defending itself in the action.

As an additional matter, the district court may not even have jurisdiction to issue the *Order*, as diversity of citizenship was at issue on that date and may still be at issue for purposes of appeal and if additional information regarding citizenship arises. Case No. 23-CV-79-ABJ, Doc. No. 324 at 19. The issuance of an order when jurisdiction is not proper constitutes irreparable harm. *See Est. of Cummings by & through Montoya v. United States*, No. CV 12-00081 WJ/GBW, 2018 WL 1271279, at 5 (D.N.M. Mar. 9, 2018) (noting that forcing a defendant to relitigate issues in

---

[1] MineOne's ability to pay its creditors is another issue arising out of the district court's *Order* which MineOne will preserve for a later time.

state court previously decided by the court is irreparable harm); *see also In re SDDS, Inc.*, 97 F.3d 1030, 1041 (8th Cir. 1996) ("Requiring [defendant] to relitigate in the state court issues previously decided by this Court constitutes an irreparable harm."); *see also Ballenger v. Mobil Oil Corp.*, 138 F. App'x. 615, 622 (5th Cir. 2005) ("[D]emonstrating that the state litigation concerns an issue actually decided by the federal courts is sufficient to demonstrate both the harm of continuing the state litigation and the lack of an adequate remedy at law."). The district court's *Order* constitutes serious irreparable consequence that cannot be remedied absent immediate appeal because if it is determined the district court did not have jurisdiction, MineOne could be forced to relitigate issues including placement of the proceeds of the CleanSpark transaction.

Further, the issuance of the *Order* holding the proceeds from the CleanSpark deal was not even ripe for consideration at that juncture because it was unclear whether the sale would close on both Sites and on what price terms it would close to even begin to calculate an amount to attach and/or garnish. *See Fourth Corner Credit Union v. Fed. Rsrv. Bank of Kansas City*, 861 F.3d 1052, 1060-61 (10th Cir. 2017) ("Just because resolution of a legal question is possible … does not mean it is ripe to decide … the question of fitness does not pivot solely on whether a court is capable of resolving a claim intelligently, but also involves an assessment of whether it is appropriate for the court to undertake the task … Thus, if a plaintiff's claim,

though predominantly legal in character, depends upon future events that may never come to pass, or that may not occur in the form forecasted, then the claim is unripe."); *see also Miller v. Austin*, 622 F. Supp. 3d 1105, 1112 (D. Wyo. 2022) (noting that preliminary relief still requires ripeness in order to be justiciable); *see* Case No. 23-CV-79-ABJ, Doc. No. 195-4 (noting that the purchase price would be paid at closing and noting various contingent payments that may be made upon later occurrences).

The North Range Site still has yet to close and is not guaranteed to close because it is subject to CFIUS approval and CleanSpark closing. *See* Case No. 23-CV-79-ABJ, Doc. Nos. 195-3, 195-4. Because the issue was not ripe for the district court's review and still is not entirely ripe for review given the North Range Site is still pending a final closing, there is irreparable harm to MineOne in potentially having to relitigate these issues if the deal does not close. This is evident from the evolving nature of the transaction with CleanSpark and the numerous amendments that have already had to occur to the amount of money subject to the *Order*. *First Amendment to Prejudgment Writ of Attachment*, *First Amendment to Prejudgment Writ of Garnishment*, Case No. 23-CV-79-ABJ, Doc. Nos. 276-277 and *Second Amendment to Prejudgment Writ of Attachment*, *Second Amendment to Prejudgment Writ of Garnishment*, Doc Nos. 294-295 (amending the amount to be held in the court's registry to account for changes related to the deal).

### III.  Conclusion

The district court's *Order* is actually an injunction in substance and is appealable under Section 1292(a)(1). It constitutes serious irreparable consequence that cannot be effectively challenged without an immediate appeal. MineOne respectfully requests this Court enter an order finding that it has jurisdiction to address the appeal.

DATED this 27th day of August, 2024.

                                               MINEONE WYOMING DATA CENTER, LLC,
APPELLANT

*/s/ Sean Larson*
Sean Larson Wyo. Bar #7-5112
HATHAWAY & KUNZ, LLP
P. O. Box 1208
Cheyenne, WY 82003
Phone: (307) 634-7723
Fax: (307) 634-0985
slarson@hkwyolaw.com


ATTORNEY FOR APPELLANT

# CERTIFICATE OF COMPLIANCE UNDER FED. R. APP. P. 32(a)(5) & (6)

1. This *Response to Order* does not require certification of compliance with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) as it is excluded by Fed. R. App. P. 32(c)(2)(B). This *Response to Order* is 3,303 words and 15 pages.

2. This brief complies with the typeface requirements of Fed R. App. P. 32(a)(5) and the type style requirements of Fed R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

DATED this 27th day of August, 2024.

By: */s/ Sean Larson*
Sean Larson (Wyo. Bar #7-5112)
HATHAWAY & KUNZ, LLP
2515 Warren Avenue, Suite 500
P.O. Box 1208
Cheyenne, WY  82003-1208
(307)  634-7723

ATTORNEY FOR DEFENDANT-APPELLANT

## CERTIFICATE OF DIGITAL SUBMISSION

All required privacy redactions have been made in this brief.

The hard copies to be submitted to the court are exact copies of the version submitted electronically.

The electronic submission of this brief was scanned for viruses using the most recent version of Sophos Anti-Virus and according to the program, is free of viruses.

*/s/ Sean Larson*
Sean Larson
ATTORNEY FOR DEFENDANT-APPELLANT

August 27, 2024

## CERTIFICATE OF SERVICE

I, Sean Larson, hereby certify that on August 27, 2024, I electronically filed the foregoing Response to Order with the Clerk of Court using the CM/ECF System which based on the records currently on file the Clerk of Court will transmit a Notice of Electronic Filing to all registered counsel of record.

*/s/ Sean Larson*
Hathaway & Kunz, LLP