UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

BCB CHEYENNE LLC d/b/a BISON
BLOCKCHAIN, a Wyoming limited
liability Company,

**v.**

MINEONE WYOMING DATA
CENTER, LLC, a Delaware limited
liability company; MINEONE
PARTNERS LLC, a Delaware limited
liability company; TERRA CRYPTO,
INC., a Delaware corporation; BIT
ORIGIN, LTD, a Cayman Island
Company; SONICHASH, LLC, a
Delaware limited liability company;
BITMAIN TECHNOLOGIES
HOLDING COMPANY, A Cayman
Island Company; BITMAIN
TECHNOLOGIES GEORGIA
LIMITED,a Georgia corporation; and
JOHN DOES 1-18, related persons and
companies who control or direct some
or all of the named Defendants,

Case No. 24-8048

**APPELLEE BCB CHEYENNE LLC'S WRITTEN MEMORANDUM
ADDRESSING (1) THE JURISDICTIONAL ISSUE IDENTIFIED IN THE
COURT'S AUGUST 13, 2024 ORDER; AND, (2) APPELLANT MINEONE
WYOMING DATA CENTER, LLC'S [SIC] AUGUST 27, 2024 RESPONSE
TO THAT ORDER**

THERE ARE NO RELATED OR PRIOR APPEALS

**COMES NOW** the Appellee, BCB Cheyenne LLC ("BCB") and submits the following memorandum in response to this Court's August 28, 2024 text Order.

## I.    FACTS

The facts in *DiTucci* are remarkably similar to the case at bar. Therefore, there is no reason for this Court to abandon its precedent as announced in *DiTucci*.

### Claims

In *DiTucci,* the plaintiffs alleged they thought they were investing in safe and secure real property transactions with guaranteed lease payments, but instead were the victims of a fraudulent scheme. [*DiTucci v. Ashby*, No. 2:19-CV-277-TC, 2019 WL 2579268, at *1 (D. Utah June 24, 2019)].

In this case, BCB entered into what it thought was a safe contract with a well-funded bitcoin mining company (based on that company providing, during the due diligence period before the deal was signed, (a) proof of liquid funds of nearly $21.5M and (b) proof of having over 16,000 bitcoin mining computers (with an aggregate purchase price over $78M)). BCB would get guaranteed payments during Phase 2 of the project (consisting of (a) deferred consideration for an electric power contract BCB assigned to the company and (b) compensation for providing operations, maintenance, and hosting to the company). Instead, the company (MineOne) anticipatorily repudiated the contract, replaced BCB with MineOne's own team led by Chinese national Huaili Zhang (who MineOne later disclosed,

during this lawsuit, actually represented contractor JWJ Technology) for Phase 2 of the project, kept BCB's valuable electrical power contract, and damaged BCB to about $22 million over the remaining 5-year term of the parties' agreement (consisting of the aforementioned (a) deferred consideration for the electric power contract and (b) profits for providing Phase 2 operations, maintenance, and hosting services).

### Timing of the Motion for Prejudgment Attachment

In *DiTucci,* plaintiffs filed an emergency motion seeking to attach the proceeds before the defendant sold his $2.4 million home because plaintiffs believed the defendant was about to become insolvent.

BCB filed its emergency motion seeking prejudgment attachment and garnishment of the proceeds of MineOne's imminent sale of its assets to CleanSpark because BCB believed that MineOne would move those assets to China beyond the reach of the district court. [ECF 182].

### Like in *DiTucci*, MineOne was getting ready to sell its assets

Like the defendant in *DiTucci,* MineOne had a binding contract for the sale of its assets when BCB filed its Emergency Motion for prejudgment writs on May 15, 2024. [*See* ECF 182]. Contrary to MineOne's claim that it "began" negotiations with CleanSpark "in light of" the May 13, 2024 Presidential Order requiring divestiture, in fact, MineOne reached an agreement for the sale of both properties

3

with CleanSpark on May 8, 2024. [*Compare* Doc. 010111101442 (Appellant's Response to Order) at 3 *with* ECF 189 at 3; 195 at 5-6]. Thus, BCB's initial filing for prejudgment attachment and garnishment was not premature since MineOne had a binding contract to sell its assets a week before BCB filed anything.

### Plans to pay off insiders with the proceeds from the sale of assets

In *DiTucci,* the defendant planned to pay off unsecured, insider creditors with the sales proceeds from his house. [*DiTucci,* 2019 WL 2579268, at *6 n. 8)]. Here, MineOne made the same argument that insider, related companies (who are actually camouflaged equity owners trying to pose as creditors) should be paid out of the CleanSpark proceeds ahead of BCB, MineOne's largest creditor. [ECF 195 at 11-12].

### Denial of *ex parte/*protective orders with a timely evidentiary hearing

The plaintiffs in *DiTucci* sought an *ex parte* order. BCB did not seek an *ex parte* order, but did seek an emergency protective order. In both cases, the district courts denied the *ex parte* and protection orders, but both courts held an expedited evidentiary hearing on the merits. [*Compare DiTucci*, 2019 WL 2579268, at *1 *with* ECF at 194].

The *DiTucci* court entered its order just three weeks after the plaintiffs filed for their writs. [*DiTucci*, 2019 WL 2579268, at *1]. In *DiTucci,* the house was sold between the filing of the motion and the hearing on the prejudgment attachment, but

the district court ordered the defendant not spend any of the proceeds from the sale. [*DiTucci*, 2019 WL 2579268, at *1].

In this case, the trial court entered its order just 43 days after BCB filed for its prejudgment writs, but before the closing between CleanSpark and MineOne on either property. [ECF 185, 254]. Thus, the *DiTucci* court's interim order before its evidentiary hearing had the exact same legal impact as the Wyoming district court's order granting the writs of attachment and garnishment.

### The courts considered the strength of the plaintiffs' claims

The *DiTucci* court analyzed the likelihood of success on the merits in granting the prejudgment attachment. [*DiTucci*, 2019 WL 2579268, at *4-5]. Likewise, the Wyoming district court concluded that "it appears that plaintiff has a meritorious claim for relief" in determining whether to grant the prejudgment writs. [ECF 254 at 3].

### The court Orders maintain the *status quo*

Finally, the trial court in *DiTucci* ordered the $844,816.83 in net proceeds of the sale of the house ($496,995.36 earmarked for a townhome and $347,821.48 in cash) could not be spent or encumbered. [*DiTucci*, 2019 WL 2579268, at *1]. In *DiTucci,* the defendant sold the home while the motion was pending.

In this case, the trial court entered writs of attachment and garnishment, which instructed the closing agent, Republic Title of Texas, Inc., how to handle any

5

proceeds that would come into its possession from the Campstool or North Range sites if the sale(s) went through. [ECF 261]. Following the district court's June 28, 2024 Order and BCB posting its surety bond, the Clerk of Court issued the writs, and when the Campstool property closed on July 26, 2024, funds were then deposited into the district court's registry. [ECF 304].

### True secured creditors got paid

In *DiTucci,* the district court ordered that only the net proceeds be subject to the attachment. [*DiTucci*, 2019 WL 2579268, at *9]. Likewise, in this case the Wyoming district court ordered that monies owed MineOne's lone secured creditor, Antalpha, was not subject to attachment. [ECF 275].

## II.    ANALYSIS

**Under Wyoming law, the district court properly ordered the Clerk of Court to issue prejudgment writs of attachment and garnishment; the Clerk issued the writs; the writs were served; and third-party garnishee, Republic Title of Texas, deposited funds with the court, and therefore the district court's order is not appealable under 28 U.S.C. § 1292(a)(1).**

MineOne argues that the writs at issue are not prejudgment writs at all because they are (a) not directed at the sheriff, but instead are directed to Republic Title of Texas and (b) it did not actually attach any property because MineOne had not closed the sale of either property. [Doc. 010111101442 at 6-7]. MineOne misunderstands Wyoming law on garnishments and ignores what actually happened in this case.

Although the underlying facts of *DiTucci* are remarkably similar to the facts in this case, procedurally these cases are different. The Wyoming district court followed Wyoming law on garnishments. Therefore, what this Court "reserve[d] for another day" in *DiTucci* it can answer today: the writ entered in this case is a prejudgment writ of garnishment, which is not appealable under 28 U.S.C. § 1292.

**(a)    <u>Wyoming law on garnishments</u>**

Wyoming law allows for prejudgment writs of garnishment. Wyo. Stat. Ann. § 1-15-103(a). "A prejudgment writ of garnishment is available as a means of attachment of tangible or intangible property, other than earnings from personal services of the defendant, at any time after the filing of a complaint and before judgment[.]" Wyo. Stat. Ann. § 1-15-401(b). The statute provides that when a party seeks to attach "[p]ersonal property, other than earnings from personal services as defined by W.S. 1-15-102(a)(vi), in the possession of another person shall be attached by service of a writ of garnishment as provided by W.S. 1-15-401 through 1-15-425[.]" Wyo. Stat. Ann. § 1-15-203 (a)(viii). Thus, Wyoming's prejudgment garnishment statutes apply.

Under Wyoming's prejudgment garnishment statutes, a prejudgment writ of garnishment may issue upon a showing that the proposed defendant has "personal property or rights to obligations of performance" that are in the possession of a third-party. Wyo. Stat. Ann. § 1-15-403 (a)(iii). "If authorized by a written order of the

court pursuant to W.S. 1-15-103(a)(i), the clerk shall issue one (1) or more writs of prejudgment garnishment upon the filing by the plaintiff of the bond required by W.S. 1-15-104." Wyo. Stat. Ann. § 1-15-404. A writ of prejudgment garnishment is "directed to the person or persons designated in the plaintiff's affidavit as garnishee" and advises the garnishee that "he is attached." Wyo. Stat. Ann. § 1-15-406. The garnishee may deliver to the officer serving the writ the garnished funds and the officer shall return the funds and the writ to the court. Wyo. Stat. Ann. § 1-15-411.

**(b)    Tenth Circuit and other applicable law on appealing attachments**

"[W]rits of attachment . . . are not appealable as injunctions." *Ditucci v. Bowser*, 985 F.3d 804, 809 (10th Cir. 2021). The Circuit Courts and "leading treatises all agree that true writs of attachment do not fall under § 1292(a)(1)." *Id.*

"Garnishments  . . . are a form of attachment." *In re Lucas*, 107 B.R. 332, 334 (Bankr. D.N.M. 1989). "Enforcement of such traditional security devices as attachment and replevin ordinarily is thought not to involve an injunction within the meaning of § 1292(a)(1). This result seems correct with respect to established traditional devices that do not command action beyond preservation or surrender of property." 16 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3922.3 (3d ed. updated 2020).

**(c)    Analysis**

In *DiTucci*, the court issued an order.  There was no separate writ issued by the clerk.  The order was directed to the defendant.  The order required the defendant to deposit monies with the court.  All of these seemed contrary to Utah's rules on prejudgment attachments.  *DiTucci,* 985 F.3d at 810.  Therefore, this Court "reserve[d] for another day . . . whether a writ like the Order constitutes a writ of attachment under Utah law[.]" *Ditucci*, 985 F.3d at 810.

In this case, the Wyoming district court and BCB followed the procedures for making a prejudgment attachment on funds held by an escrow agent, which is a writ of garnishment.  Therefore, MineOne may not appeal the district court's order.

Following the court's order, BCB posted a bond as required by Wyo. Stat. Ann. § 1-15-104(a).  [ECF 255].  The Clerk then entered a prejudgment writ of garnishment as required under Wyo. Stat. Ann. § 1-15-404.  [ECF 261, 277, 295].[1] The Clerk directed the writ to the third-party escrow agent as required by Wyo. Stat. Ann. §1-15-406.  [*Id.*].  BCB properly served the writ on the third-party garnishee. [ECF 266].  Republic Title held "rights to obligations of performance" in favor of MineOne (and eventually held MineOne's personal property following the closing

---

[1]  Because of delays in the closing, the amount due to MineOne's only secured creditor, Antalpha, continued to increase due to interest expense.  Therefore, the writ of garnishment had to be amended twice.

on the Campstool site) as required under Wyo. Stat. Ann. § 1-15-403(a)(iii).[2]  The

third-party escrow agent answered the writ of garnishment and deposited funds with

the court.  [*See* ECF 280 (Answer to original Writ of Garnishment); ECF 304

(Answer to Amended Writ of Garnishment)].  Therefore, unlike the situation in

*DiTucci,* this case clearly involves a writ of garnishment.

MineOne attempts to obscure the procedural history and record below.  First,

MineOne cites to BCB's alleged request for an injunction.  (Doc. 010111101442 at

10).  However, this is made in the context of the first motion for a protective order

so that the district court would have time to have a hearing on the merits of the

motion for prejudgment writs.  Likewise, MineOne's reference to the district court's

reference to an "injunction" is in the district court's order regarding the emergency

protective order.  [*Compare* 0101111442 at 10 *with* ECF 194].

However, the district court's order on the merits following the June 26, 2024,

evidentiary hearing, and the subsequent procedural history outlined above, are clear

that the district court issued prejudgment writs of garnishment and attachment.

[*Compare* ECF 194 at 4-5 *with* ECF 254].  The district court issued an order, the

Clerk issued a writ, and the garnishee answered the writ, and deposited funds with

the district court.

---

[2]  MineOne's argument that there was nothing to attach is belied by the affidavit of
its principal, Eric Rengifo, explaining how the monies from the CleanSpark sale
were scheduled to be escrowed.  [*See* ECF 195-1 at 16 (¶49)].

Likewise, MineOne's citation to inapposite case law does not change the facts of this case, namely that the district court entered prejudgment writs of attachment and garnishment. The word "writ" does not even appear in the *Hasemi* or *Klipsch* decisions. Moreover, the facts from each case are entirely different from the facts of this case.

For example, in *Hashemi,* the defendant had to go get property from another state. *Inter-Regional Fin. Grp., Inc. v. Hashemi,* 562 F.2d 152, 154 (2d Cir. 1977). In this case, because the court issued a true writ of garnishment, MineOne had to do nothing except close on a deal that it already intended to close in Texas. Then the *escrow agent, not MineOne,* sent the closing proceeds to the district court.

In *Klipsch,* the district court expressly rejected the plaintiff's request for prejudgment attachment under New York law. [*Klipsch v. Big Box,* Case 1:12-cv-06283-VSB, Document 294 at 40]. The plaintiff/appellee conceded jurisdiction under 28 U.S.C. § 1292, because the case involved an asset restraint that was not pursuant to New York's attachment law, but instead involved a discovery sanction order and an order that the defendant post a $2.3 million bond. *Klipsch Grp., Inc. v. ePRO E-Com. Ltd.*, 880 F.3d 620, 623 (2d Cir. 2018).

Under the facts of this case, MineOne may not appeal the district court's decision. That is because the district court clearly issued prejudgment writs of

garnishment and attachment which are not subject to interlocutory appeal under 28 U.S.C. § 1291.

**Even if this Court determines that the prejudgment writs of attachment and garnishment are not proper attachments, which are not subject to immediate appeal pursuant to 28 U.S.C. § 1292(a)(1), MineOne cannot show that the prejudgment writs issued by the district court are an injunction that is immediately appealable.**

MineOne argues that the writs at issue are not prejudgment writs, but instead are injunctions. [Doc. 010111101442 at 8]. The record does not support that claim. However, even considering the writs as providing some sort of injunctive relief, MineOne cannot demonstrate that the district court's order, and subsequent writs issued by the Clerk, are immediately appealable under *Carson v. American Brands, Inc.,* 450 U.S. 79, 101 S.Ct. 993, 667 L.Ed. 59 (1981).

### (a)   Injunctions

"Most court orders are injunctions at some level of generality, but Congress did not envision that every interlocutory order restraining a party's actions could be appealed under § 1292(a)(1)." *United States ex rel. Lutz v. United States*, 853 F.3d 131, 139 (4th Cir. 2017). Under Tenth Circuit precedent, an injunction is:

(a) an [order] is directed to one or more of the parties;

(b) coercive and equitable in nature;

(c) enforceable by contempt, and;

(d) grants at least some of the relief that is sought in the litigation.

*DiTucci,* 985 F.3d at 808-809.

"Recognizing that '§1292(a)(1) was intended to carve out only a limited exception to the final-judgment rule,'" the Supreme Court has "'construed the statute narrowly to ensure that appeal as of right under § 1292(a)(1) will be available only in circumstances where an appeal will further the statutory purpose of permitting litigants to effectually challenge interlocutory orders of *serious, perhaps irreparable, consequence.*'" *DiTucci,* 985 F.3d at 809 (*quoting Carson*, 450 U.S. at 84, 101 S.Ct. 993) (emphasis added).  Under *Carson,* "[u]nless a litigant can show that an interlocutory order of the district court might have a "serious, perhaps irreparable, consequence," and that the order can be "effectually challenged" only by immediate appeal, the general congressional policy against piecemeal review will preclude interlocutory appeal." *Carson*, 450 U.S. at 84, 101 S. Ct. 993.

**(b)    Analysis**

First, the prejudgment writs do not meet this Court's definition of an "injunction."  The writs are not directed at a party and do not require a party to do anything.  Since the writs do not require any party to do anything, the writs are not enforceable by contempt.[3]  The writs do not grant part of the relief requested.  The writs require the monies be deposited with the Court thereby maintaining the *status*

---

[3]    Republic Title, if it failed to comply with the writ of garnishment, could be responsible for paying the amount of the writ.  *See* Wyo. Stat. Ann. § 1-15-413.

*quo*. Thus, the prejudgment writs in this case are not even injunctions under Tenth Circuit case law.

Second, the district court did not consider the traditional four factors used by a court when determining whether to issue a preliminary injunction. *See Free the Nipple-Fort Collins v. City of Fort Collins, Colorado*, 916 F.3d 792, 797 (10th Cir. 2019). There is no mention of irreparable injury in the district court's order nor is there any balancing between the harms that would befall BCB and MineOne, respectively. *Compare* ECF 254 *with Free the Nipple*, 916 F.3d at 797. There is no discussion whether the injunction is contrary to the public interest. *Id.*

Judge Johnson did not mention "a substantial likelihood of success on the merits[.]" *Free the Nipple, supra.* The only discussion of the merits is Judge Johnson finding that "it appears the plaintiff has a meritorious claim for relief." [ECF 254 at 3]. As such, this is a "prejudgment" writ of garnishment: the district court had to consider whether BCB had a meritorious claim to determine if BCB could avail itself of the prejudgment attachment remedy. And it did.

Third, even if the prejudgment writs are injunctions, MineOne cannot show serious or irreparable consequences. MineOne argues the attachment of the proceeds endangers MineOne having legal representation. [Doc. 010111101442 at 11]. MineOne did argue this below. However, what MineOne omits from its analysis is that its agreement with CleanSpark did not cover all of MineOne's assets. Instead,

MineOne continued to own millions of dollars worth of improvements and equipment (that was not included in the sale to CleanSpark) on the North Range site that was not subject to the writ of garnishment.[4]

In fact, it appears that Loeb & Loeb has been paid since complaining about their fees in the district court since they continue to litigate every issue in the trial court. For example, MineOne has subpoenaed several of BCB's passive investors for depositions in Ohio, Illinois, Tennessee, and Florida. [ECF 306-308]. Also, most of the improvements and equipment from the North Range site have now been removed, suggesting that MineOne has sold the improvements and equipment to an unnamed buyer, and subsequently received cash with which to pay Loeb & Loeb.

Regardless, MineOne does not have a right to use the sales proceeds from its CleanSpark deal for its legal fees. *Westar Energy, Inc. v. Lake*, 552 F.3d 1215, 1218 (10th Cir. 2009) (executive's right to have his legal bills paid was contained in the company's articles of incorporation). Unlike in *Lake* where Kansas law provided a

---

[4] The May 29, 2024 Amended and Restated Purchase and Sale Agreement between MineOne and CleanSpark states "Notwithstanding anything set forth in Section 1(a), no Improvements or equipment located on the Real Property [North Range site] shall be treated as Property and required to be sold pursuant to this Agreement. For the purpose of this Agreement, "Improvements" mean all buildings and structures, together with all and singular tenements, hereditaments and appurtenances thereunto erected or situated on the Real Property, including without limitation, the fixtures owned by Seller [MineOne] now situated on or appurtenant to such buildings and structures, but excluding the property of all tenants or licensees." [ECF 198-1 at 2].

right for the defendant to receive advances under his contract for the payment of legal fees, MineOne identifies no such right to advancements for its legal fees.

Likewise, MineOne's reliance on *Lutz* is misplaced.  In *Lutz,* the Fourth Circuit held that a prejudgment attachment of real and personal property was not immediately appealable. *Lutz*, 853 F.3d at 134.  Regardless, to MineOne's point, the Fourth Circuit reiterated that the appellants in *Lutz* had not shown any inability to pay legal fees or living expenses.  Three days before the district court's order granting the prejudgment writs, MineOne added two more lawyers. [ECF 244, 245]. MineOne subpoenaed passive investors in BCB for depositions in Ohio and Illinois. [ECF 306, 307, 308].  MineOne even offered (in violation of Rule 68 procedures) to confess judgment in favor of BCB for $1.8 million.  [ECF 296].[5] Thus, MineOne has not shown any inability to pay its legal fees.  Moreover, BCB is unaware of any case where a law firm like Loeb & Loeb would be permitted to withdraw from a case because the client was not paying its bill.  MineOne cites no case law that would give its attorneys the right to withdraw.  As Chief Justice Roberts stated, "slipshod performance [by an attorney] because 'I only had so much money I could bill or afford to spend on this brief' is a great disservice to the court."  Brian A. Garner,

---

[5]  MineOne may attempt to argue that its offer of judgment would have come from the attached funds.  However, that position is inconsistent with its claims that it has other creditors to whom it owes about $13 million.  [*See* ECF 195-1 at 22-23].

16

*The Scribes Journal of Legal Writing,* Vol. 13 at 14 (2010). Therefore, MineOne's attorneys are bound to provide quality representation even if the bill may not be paid.

Next, MineOne claims that "the issuance of an order when jurisdiction is not proper constitutes irreparable harm." [Doc. 010111101442 at 12 *citing Est. of Cummings by & through Montoya v. United States*, No. CV 12-00081 WJ/GBW, 2018 WL 1271279, at *5 (D.N.M. Mar. 9, 2018)]. *Cummings* is the exact opposite of this case. In *Cummings,* there had been a finding that there was no personal jurisdiction by the state court. When the case was remanded, the defendant sought an injunction that it did not have to litigate in Federal court based on the state court finding of no personal jurisdiction. In this case, the only finding by the district court is that it *does* have subject matter jurisdiction. [ECF 324].

*In re SDDS* is even less helpful to MineOne. [Doc. 010111101442 at 13]. In *SDDS VIII*, the Eighth Circuit reversed the district court's denial of an injunction against the defendant pursuing state court proceedings because the Eighth Circuit had previously determined, in *SDDS VI*, the exact same issue. *Compare In re SDDS, Inc. v. State of S.D.*, 97 F.3d 1030, 1042 (8th Cir. 1996) *with In SDDS, Inc. v. State of S.D.*, 47 F.3d 263, 264 (8th Cir. 1995)). The Eighth Circuit concluded that since it already had determined that the plaintiff had a property right to develop its landfill and that the referendum affected that right, State officials could not attempt to challenge that ruling in the State Supreme Court.

Again, in this case, the only determination by the district court is that it has subject matter jurisdiction. There is no litigation in state court that could lead to relitigation. Instead, MineOne claims the district court's ruling on subject matter jurisdiction constitutes an irreparable harm. MineOne has no right to an interlocutory appeal of the district court's subject matter jurisdiction ruling. *Catlin v. United States*, 324 U.S. 229, 236, 65 S. Ct. 631, 635, 89 L. Ed. 911 (1945) ("denial of a motion to dismiss, even when the motion is based upon jurisdictional grounds, is not immediately reviewable"). Thus, its complaints about the district court's order on subject matter jurisdiction do not amount to irreparable harm.

Finally, MineOne's argument regarding ripeness misses the point. [Doc. 010111101442 at 13-14]. As explained above, the amendments to the writs are primarily the result of changes in the amount of interest that needed to be paid to MineOne's only true secured creditor, Antalpha, following the sale of the Campstool property.

Regardless, MineOne does not have to "relitigate" anything with regard to the prejudgment writs except close their transaction with CleanSpark. According to Loeb & Loeb attorney Paula Colbath, MineOne is set to close with CleanSpark on the North Range property Thursday, September 12, 2024. If that closing fails for any reason, and another deal is made with a new escrow agent, the writ of

garnishment merely needs to be amended to identify the new escrow agent as the garnishee.

MineOne's ripeness argument tries to create a situation where BCB could not obtain prejudgment writs (to avoid the very evil the prejudgment writs address) (*i.e.*, here, a Chinese company selling all of its assets and moving the proceeds beyond the jurisdiction of the United States courts due to there being no order directing an escrow agent to deposit the proceeds with the court). MineOne's ripeness argument is unsupported by the facts of this case or case law within the Tenth Circuit or elsewhere.

## III.  CONCLUSION

As the Fourth Circuit noted in *Lutz,* at some very esoteric level all court orders are injunctive in nature. However, nothing in the record indicates the Wyoming district court was issuing an injunction. The trial court did not mention the familiar four-factor preliminary injunction test in its order granting BCB a prejudgment writ of garnishment.

Instead, everything about the district court's substantive analysis and procedural handling of this case shows this is a prejudgment writ of garnishment. As such, this Court lacks subject matter jurisdiction over MineOne's interlocutory appeal. For the reasons set forth above, BCB prays this Court will dismiss MineOne's premature appeal.

Dated this 11ᵗʰ day of September 2024.

By:    */s/ Patrick J. Murphy*_____
Patrick J. Murphy, WSB #5-1779
Williams, Porter, Day & Neville, PC
159 N Wolcott St. Suite 400
Casper, WY 82601
Ph: (307) 265-0700
pmurphy@wpdn.net

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

I certify that the foregoing brief is double-spaced and utilizes a proportionally spaced 14-point Times New Roman typeface. The brief comprises a total of 4,308 words, excluding parts of the brief exempted by Rule 32(a) and Tenth Circuit Rule 32(b).

DATED this 11ᵗʰ day of September, 2024.

*/s/ Patrick J. Murphy*
Patrick J. Murphy

## **CERTIFICATE OF SERVICE**

The undersigned does hereby certify that a true and correct copy of the foregoing document was served upon counsel as indicated below this 11th day of September 2024.

| | |
|---|---|
| Sean M. Larson, WSB No. 7-5112<br>Kari Hartman, WSB No. 8-6507<br>HATHAWAY & KUNZ, LLP<br>P.O. Box 1208<br>Cheyenne, WY 82001<br>slarson@hkwyolaw.com<br>khartman@hkwyolaw.com | [  ]  U.S. Mail (prepaid)<br>[x]  CM/ECF Electronic Transmission<br>[  ]  Overnight Delivery<br>[  ]  Hand Delivery<br>[  ]  Electronic Mail |
| Marc S. Gottlieb<br>ORTOLI ROSENSTADT, LLP<br>366 Madison Avenue, 3rd Floor<br>New York, NY 10017<br>msg@orllp.legal | [  ]  U.S. Mail (prepaid)<br>[x]  CM/ECF Electronic Transmission<br>[  ]  Overnight Delivery<br>[  ]  Hand Delivery<br>[  ]  Electronic Mail |
| Meggan J. Hathaway<br>Jane M. France<br>SUNDAHL, POWERS, KAPP & MARTIN, LLC<br>500 W. 18th Street, Ste. 200<br>Cheyenne, WY 82003<br>mhathaway@spkm.org<br>jfrance@spkm.org | [  ]  U.S. Mail (prepaid)<br>[x]  CM/ECF Electronic Transmission<br>[  ]  Overnight Delivery<br>[  ]  Hand Delivery<br>[  ]  Electronic Mail |

| | |
|---|---|
| Paula Colbath, *Pro Hac Vice*<br>Alex Inman, *Pro Hac Vice*<br>David Forrest, *Pro Hac Vice*<br>Leily Lashkari, *Pro Hac Vice*<br>LOEB & LOEB LLP<br>345 Park Avenue New York, NY 10154<br>pcolbath@loeb.com<br>ainman@loeb.com<br>dforrest@loeb.com<br>llashkari@loeb.com | [  ]   U.S. Mail (prepaid)<br>[  ]   U.S. Mail (prepaid)<br>[x]   CM/ECF Electronic Transmission<br>[  ]   Overnight Delivery<br>[  ]   Hand Delivery<br>[  ]   Electronic Mail |
| Marc Feinstein, *Pro Hac Vice*<br>Daniel Hirsch, *Pro Hac Vice*<br>David Iden, *Pro Hac Vice*<br>Sherin Parikh, *Pro Hac Vice*<br>Kate Stutz, *Pro Hac Vice*<br>O'MELVENY & MYERS<br>400 South Hope Street<br>Los Angeles, CA 90071-2899<br>mfeinstein@omm.com<br>dhirsch@omm.com<br>diden@omm.com<br>sparikh@omm.com<br>kstutz@omm.com | [  ]   U.S. Mail (prepaid)<br>[x]   CM/ECF Electronic Transmission<br>[  ]   Overnight Delivery<br>[  ]   Hand Delivery<br>[  ]   Electronic Mail |
| William Pao, *Pro Hac Vice*<br>COOLEY LLP<br>Wells Fargo Center, South Tower<br>355 South Grand Avenue, Suite 900<br>Los Angeles, CA 90071-1560<br>Ph.:   213-561-3249<br>Fax:  213-430-6407<br>wpao@cooley.com | [  ]   U.S. Mail (prepaid)<br>[x]   CM/ECF Electronic Transmission<br>[  ]   Overnight Delivery<br>[  ]   Hand Delivery<br>[  ]   Electronic Mail |

| Khale J. Lenhart, WSB No. 7-4581<br>Tyson R. Woodford, WSB No. 8-6650<br>HIRST APPLEGATE LLP<br>1720 Carey Ave. Room 400<br>P.O. BOX 1083<br>Cheyenne, WY 82003<br>klenhart@hirstapplegate.com<br>twoodford@hirstapplegate.com | [  ]  U.S. Mail (prepaid)<br>[x]   CM/ECF Electronic Transmission<br>[  ]  Overnight Delivery<br>[  ]  Hand Delivery<br>[  ]  Electronic Mail |
|---|---|

By: */s/ Patrick Murphy*
Patrick J. Murphy

23